Dear Representative Landrieu:
You have requested an opinion of the Attorney General regarding tax exemptions afforded the Louisiana Superdome, ("Superdome"). You specifically ask whether the Superdome is exempt from the payment of the Street Use Franchise Tax, ("SUFT") which the City of New Orleans collects from the New Orleans Public Service, Inc., ("NOPSI") for its use of the City's streets, highways, etc., for the generation and distribution of electrical energy.
Section 62-70 of the New Orleans City Code provides:
 Section 62-70. Louisiana Superdome, facility of the Louisiana Stadium and Exposition District: Exemption from certain taxes.
 The sale of admission tickets to events, activities, or enterprises, wherever sold, provided that such events, activities, or enterprises occur or are held or conducted on the premises of the Louisiana Superdome facility owned or operated by or for the state, parking, on the premises of the said facility in connection with any such events, activities, or enterprises, whether before, during and/or after such events, activities or enterprises, and tours of the said facility shall be exempt from all taxes levied by the City of New Orleans including but not limited to the sale, use, amusement, or any other tax. However, this exemption shall not extend to any sale of goods or other tangible personal property at a trade show or other event at which the sale of such goods or property is the primary purpose of the show or event. For the purposes of this section, "events, activities, or enterprises" is defined to mean and shall mean any events, activities, or enterprises the admission to which, but for the exemption granted by this section, would be subject to the amusement tax."
A somewhat broader state law affording the exemption in LSA-R.S. 39:467 provides:
§ 467. Tax exemption, domed stadium facilities
 Any event, activity, or enterprise, or the right of admission thereto, conducted in any domed stadium facility owned and operated by or for the state, or any of its agencies, boards, or commissions, which facility has a seating capacity of at least seventy thousand and is located within a body politic and corporate and political subdivision of the state composed of more than one parish, or any sale, service, or other transaction occurring in such facility or on the publicly-owned property on which the facility is located, including without limitation the sale of admission tickets to events, activities, or enterprises, wherever sold; parking; and tours of the facility shall be exempt from all present and future taxes levied by the state or by any local taxing authority, including but not limited to the sales, use, amusement, or any other tax. However, this exemption shall not extend to any sale of goods or other tangible personal property at a trade show or other event at which the sale of such goods or property is the primary purpose of the show or event."
LSA-R.S. 33:4510 authorizes public utilities (e.g., NOPSI) to add the tax to the sales price of the service provided and to bill customers on a pro rata basis. It reads, in pertinent part, as follows:
 § 4510. Charge-back of certain taxes and other payments made to municipality; construction, scope and application of provisions
 A. Whenever any municipality of the state of Louisiana shall collect or receive any payment from any public utility operating within such municipality, including those utilities whose rates and charges are regulated by the Louisiana Public Service Commission, for or by reason of the use of its streets, alleys or public ways or places, or for or by reason of the operation of the utility's business or by reason of any agreement between such municipality and the utility, whether such payment be called a license, occupational, privilege, franchise or inspection tax, charge or fee, or otherwise, the amount of such tax or payment may, to the extent that such tax or payment was not included as a part of the cost of furnishing services in the fixing of the rates and charges for such services by the Louisiana Public Service Commission, be added to the sales price of such public utility's service and billed pro-rata to the utility's customers receiving local service within the municipality collecting such taxes or receiving such payments."
Section 3-101(2) of the City of New Orleans Home Rule Charter, ("Charter") empowers the Council to levy taxes:
 "(2) The Council shall have the right to levy any and all classes of taxes, excises, licenses and fees necessary for the proper operation and maintenance of the municipality for the payment of debt, and for capital improvements that are not expressly prohibited by the Constitution."
Section 4.1603(2) of the Charter empowers the Council to levy a franchise tax:
 "The Council may require adequate consideration for the privilege of using the streets or other public areas in the ordinance granting a franchise, privilege or permit."
Ordinance No. 7068 C.C.S. of 1922, as amended by Ordinance No. 4272 M.C.S. of 1970, of the City of New Orleans, Section 7, levies the SUFT at issue:
 "Sec. 7. That, so long as any rights are exercised under this indeterminate permit, in consideration of the use of the streets, highways, bridges, etc., as hereinabove provided the grantee, its successors or assigns, shall pay to the City of New Orleans a street use franchise tax equal to two and one-half per cent (2 1/2 pct.) of the gross receipts of the grantee, its successors or assigns, from the sale of electrical energy in the City of New Orleans under this indeterminate permit, except receipts from energy sold to another utility for resale. The proceeds from said tax shall be used for street and other civic projects and seventy-five per cent (75 pct.) of such proceeds is hereby specifically dedicated to the construction, paving, repairing, improvement and maintenance of streets over which transit service is operated or will be operated or other street projects. The tax herein provided for shall be effective beginning with April 1, 1970 with payment of the amount due for each month to be made to the City of New Orleans on or before the twentieth day of the succeeding month."
As can be seen from the above, the SUFT was established by city ordinance in 1922 at the rate of two and one-half per cent (2 1/2 pct.) of the gross receipts of NOPSI, the grantee. We are aware of no state or local statutory provision or ordinance, and no constitutional provision authorizing the City of New Orleans to levy the SUFT upon the Superdome and/or other NOPSI customers. Nor are we aware of any authority whatsoever empowering NOPSI to levy a SUFT on its customers.
While LSA-R.S. 33:4510 enables NOPSI to add the amount representing the tax to the sales price of its service and bill its customers, pro rata, it does not constitute taxing authority for the City of New Orleans or NOPSI vis-a-vis NOPSI's customers. We have been advised by NOPSI officials that all customers are billed pro rata for the SUFT NOPSI pays to the City. There are no exemptions from this added cost for the services provided.
Therefore, it is the opinion of this office that the additional two and one-half per cent (2 1/2 pct.) charge for electrical service paid by the Superdome to NOPSI does not constitute a tax as envisioned by Section 62-70 of the City's Code and LSA-R.S. 39:467. Accordingly, the Superdome is not exempt from its payment.
Trusting this adequately responds to your request, I am
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: ROBERT E. HARROUN, III Assistant Attorney General
RPI:REH, III/clm 0055R